Case number 191614. James Smith et al. v. General Motors LLC. Arguments not to exceed 15 minutes per side. Mr. Alperstein, you may proceed for the appellants. Good morning, your honors. May it please the court, counsel. My name is Jason Alperstein on behalf of the appellants. I've reserved three minutes for rebuttal. This is an appeal of the district court's dismissal of plaintiffs' fraudulent concealment and consumer protection claims under Rule 12b-6. There's really only one primary issue at play in this appeal, and that's whether a claim based on the failure to disclose a safety defect requires the plaintiff to plead knowledge of not only the defect, but also of the safety risks posed by the defect. The answer is no. A defendant's knowledge of the safety implications of a defect is not an element of the claim. Other than the district court, not a single... I'm confused a little bit. There's no discussion in either brief about relevant state law, and I'm assuming this is a diversity case, right? Claims have been brought under all 50 states in this case. So are we evaluating this question of the knowledge of a safety risk under all of the laws of all of the states? Yes, but the laws of the states are pretty uniform in this regard, because what we're really dealing with is materiality. The claims are all premised on... I guess they're uniform, but you haven't given them to me, so I don't know... Am I using the restatement? What am I using here? Is it Restatement 551? Are you stipulating that that's basically the law that's going to apply in this case, or do I have to go look at the California Consumer Protection Statute and the California Law on Fraudulent Concealment? The only reason I'm asking is because it does seem to me that states are a little bit different on this knowledge. Both of you disagree, I guess. It's basically the same requirement in every state? Well, I don't think any state actually requires knowledge, the defendant's knowledge, of the safety implications of the defect, but every defendant has exclusive knowledge of material fact not known to the plaintiff. So that's common across all the states' laws, and that's really what we're dealing with here. So we're dealing with a safety risk because it's material, I assume? Yes. In other words, if it's a cosmetic defect, I don't have a duty to disclose it in any state in America. If it's a material defect, I would, I suppose, assume. And if it's a safety hazard, it's material, right? Yes, that's correct. And specifically, in a post-warranty claim... So doesn't the defendant have to know that it's material? I mean, isn't that the same thing as saying they have to know that it's a safety risk in the context of this case? No, because materiality is viewed from the perspective of a reasonable consumer. So to require that the plaintiff has to show the defendant has knowledge of the safety risks posed by a defect is the same as requiring that the defendant has to have knowledge of the defect's materiality. That's what it is. The materiality is never judged from the perspective of the defendant. It's judged by the reasonable consumer. And if there was any question as to whether this requirement was there, I think we could just take a look at the Williams v. Yamaha case. Now, the Sixth Circuit has never made that requirement and no other circuit court of appeals has. But in Williams v. Yamaha, the defendant there argued that while it may have known of the defect, it did not know of an unreasonable safety hazard posed by the defect. And in response, the Ninth Circuit Court of Appeals held that the argument, quote, elides two separate prongs of the test for consumer fraud. Pre-sale knowledge of a defect and the status of that defect as an unreasonable safety hazard. But that's exactly what the district court did here. It elided two of those prongs. And in doing so, if we just think about the practicality of what results from there, the district court essentially created a standard where GM's omission would only be actionable if plaintiff could plead that GM had actually subjectively perceived a safety issue and opted not to disclose it. But foxes don't guard the hen house for a good reason. It would just be illogical to condition plaintiff's fraudulent omission claim on GM's self-serving conclusion that a safety issue doesn't exist. No court in the country, besides the district court and the Moross court, upon which the district court relied, has ever conditioned a claim in that manner. And I think... Doesn't Wilson suggest that? I mean, Wilson seems to say that they didn't know about the safety... Was that HP? I can't remember who the company was. Yes, it is Hewlett. Didn't know about the safety hazard of the cords or whatever it was. There is one line in the entire opinion that said the one source which plaintiff tried to demonstrate knowledge was this prior class action. And the court there said that this prior class action... How would this prior class action make HP aware of the safety hazard? But if you take a look at the opinion, there's no actual analysis of defendant's knowledge of the safety risk. Wilson actually sets forth clearly the four elements. It's the existence of the defect, the existence of the safety risk, the causal connection between the defect and the safety risk, and knowledge of the defect. If we take a look at all the courts that have cited Wilson, they set forth those four elements. Not one of the cases that GMS cited to actually independently analyzed whether defendant had knowledge of the safety risk. The court below suggests that there was an agreement to use Moross. What does that mean? Was there an agreement? Well, there were certain aspects of the Moross opinion that plaintiffs did ask the court to follow. Obviously, plaintiffs did not ask the court to wholesale follow Moross or else we'd simply be asking the court to dismiss our claims because they were dismissed in that case. The aspect of the Moross opinion that plaintiffs asked the district court to follow was the finding that there was an unreasonable safety hazard. We also made clear that we did not believe knowledge of the safety risk was required. Now in Moross, the court also found that there wasn't even knowledge of the defect. So there's two components there. Wasn't knowledge of the defect, there was no knowledge of the safety risk. But what we pointed out to the court is that the district court that it could find that we plausibly alleged knowledge of the defect and still be consistent with Moross because when you compare the allegations, you can see everything that was missing in Moross that we actually have in our complaint. At bottom, the one problem with knowledge in Moross was there was no indication that there was knowledge of the propensity of the dashboards to crack at any time. There was no allegation of pre-sale knowledge and here we have all that. We have complaints that are dated, that are on the NHTSA website, that are on thechevroletforum.com where a GM representative was responding to those complaints that clearly show that there were complaints specifically about the defect that we have alleged that occurred prior to every single purchase, vehicle purchase here. And that was really the main problem in Moross. There was nothing that the court can infer that any complaint that was alleged, which I think they were 2015, 2016, there was nothing the court can infer that those complaints were even received by GM, but also that those were not included in any of the plaintiff's purchases. Were these things covered by warranty? Weren't these, wasn't this stuff covered by a warranty? There is a warranty. A lot of these, the cracking manifests after the expiration of the warranty period, which is why we're looking at the safety defect element. Obviously whether it's in warranty. Why are you not barred by the economic loss doctrine in all these states? Isn't this just a contract case? No, I don't believe there's any bar by the economic loss doctrine because we're dealing with a fraudulent concealment. We're dealing with an omission. But that's the whole point is the economic loss doctrine says you can't bring a tort claim if you've got a contract claim, right? If you've got a warranty claim? I mean, that's the whole point of it. I mean, I guess that's why you're making the safety issue? Well, the issue of economic loss doctrine hasn't come up in any of the cases that we've cited dealing with. It comes up in a lot of these warranty cases, doesn't it? It didn't preclude. Airbag cases. I mean, you always see it, right? You can't make a fraudulent concealment argument if you've got a, if all you're talking about is just a defect that's covered by a warranty. I don't see in any of the cases that have been cited in the briefs that any of the plaintiff's claims were precluded based on economic loss doctrine. I'm not sure if that was even argued in the district court, but the district court that we've found that. Where we are now is that you have given up the warranty claim, correct? Yes, that's correct. In order to bring this complaint. So I think the question is, and one of the things that we're struggling with, is whether there is a distinction between what sometimes is called fraudulent concealment, but more generally here is probably a failure of disclosure, where there's a duty to disclose, in that that is a separate claim from consumer protection claims. I understand that there's this question with Morris, there's the question with Hewlett-Packard. Many of the cases that you cite arise in the context of consumer protection, and they are the ones that tend to say you have this, that tend to ignore the question of whether the defendant understood or apprehended that there was a safety issue involved, because the determination is materiality. Is there not a distinction that even if there were a problem with failure to disclose in an individual claim, that your consumer claims could still go forward? I don't think there's a problem there. Really, all these cases are just looking at whether there was a duty to disclose the defect. So you think they rise and fall together? Yes. Certain consumer protection claims might have lesser standards than a typical fraudulent omission claim, but I don't think we really need to get into that here, because we've satisfied the elements that would satisfy any of those claims. I don't think the distinction really is necessary. And your position is Morris is wrong and Hewlett-Packard, to the extent it relies on that, is wrong, and the district court is wrong, just in the second step requirement of subjective knowledge on the part of the defendant. Yes. I think Wilson is correct. Ross incorrectly misinterpreted the Wilson opinion. And if you take a look at all the... And then you have five years later, Williams comes out, the Ninth Circuit case of Williams v. Yamaha. So if there was any question of whether Wilson added this extra requirement, Williams makes that clear that there is no additional requirement. When the court rejects the defendant's argument, that knowledge of the safety risk is required. We also have the Barranco case that actually clearly sets out what the problem is if you had to require a plaintiff to plead the defendant's knowledge of the safety issue. And as the court states there, it's really requiring the plaintiff to plead materiality. And that just can't be the case because materiality is viewed from the perspective of the consumer and the safety issue is merely the way that a plaintiff demonstrates materiality in a post-warranty claim. So it's the same type of analysis. We're still dealing with materiality. Is Williams the case, that's the Yamaha motor or whatever, the boat? Yes. Is that the case where there was... I thought the court said something about there had never been a fire or there was no allegation that there was actually a fire. Why wouldn't that be analogous here to there's no allegation that there's ever actually been a safety issue? Well, the issue of injury doesn't go towards knowledge. It goes towards whether an unreasonable safety hazard has been pled. And the case law is clear that you either need an incidence of injury or you need to have a causal connection between the defect and the safety risk. And in that case, the court just couldn't see the connection between the defect and the risk of a fire, which is why the court looked towards, is there any type of injury here? But when you have the causal connection, an injury is not required. In all the case law that we've cited, both parties make that clear. It's one or the other. So when you have the causal connection, which is satisfied where you explain the causal chain from the defect towards the ultimate safety hazard, an injury is not required. That's also why a NHTSA recall is not required. You're explaining a causal chain that's never happened, though. Is that right? We don't know if it's never happened before. We have not been able to obtain discovery yet. So we don't have an allegation. But every forum, every complaint, everything you looked at, and there's never been a report of this actually happening, right? Yes. We have not alleged that this is ever actually ultimate safety risk has ever happened. But that's actually not required for the claim. Like materiality, courts assess whether a safety risk is there based on a consumer's perspective. And an argument by the defendant that there is no safety risk is inappropriate at the motion-to-dismiss stage. If you think about it, if it's inappropriate for a defendant to argue that there is no safety risk at the motion-to-dismiss stage, then surely it's inappropriate for the defendant to argue that it wasn't aware of a safety defect as well. We'll have your rebuttal time. Thank you. Good morning, Your Honors Counsel. I'm James McGrath for General Motors. May it please the Court. Let me start with a response to your earlier question, Your Honor. General Motors, both in this case and in the Amros case, premised its motion-to-dismiss on the fact that for all the common law fraud claims and all the statutory fraud claims the defendant needed to state a plausible claim the GM had a duty to disclose. And the plaintiffs accepted that premise for purposes of the disposition in this case, and the Court below proceeded on that premise. But the duty to disclose hinges on materiality. And the case law, isn't it correct that safety is automatically material? Correct? Correct. But what the plaintiffs argue here, Your Honor, is that GM, they can plausibly state a claim that GM committed fraud if they allege that GM failed to disclose that some dashboards might develop one or two cracks after prolonged use and operation and after the warranty period had expired, even if GM had no knowledge that a safety issue was involved. The plaintiffs here have abandoned their breach of warranty claims, which the Court below said that they could go forward on, the implied warranty claim, and any other theories or causes of action such as negligence that might not turn on a defendant's knowledge or intent. And so those claims are out of the case, and we're now faced with fraud claims. And the defendant says And you think that the consumer protection claims rely on fraudulent concealment also as opposed to failure to disclose that which is a duty to disclose? Parties have all agreed below before the district court in their briefs that this is a failure to disclose case, both for the common law and the consumer protection statute. And that's the question. If you fail to disclose that which you have a duty to disclose, that's a distinct claim from fraudulent concealment, isn't it? It is, Your Honor. But in order to have a duty to disclose, you need to have, you need to, something has to trigger that. And the courts have said that needs to be material. And for purposes of our cases, the cases we've cited, materiality means it has to be a safety defect. So the question is Well, that's, so we're on the same course. Okay, good. So to be material, being a safety defect makes it a material issue. So where do you then jump over into fraudulent concealment as opposed to observing a duty to disclose a safety defect? Well, this case is not a fraudulent concealment case in the sense that it's, everybody agrees it's a failure to disclose. And so the whole, the whole case turns on whether there was a duty to disclose. And what the And that turns on whether you had a material defect, right? I believe it turns on whether General Motors knew that there was a material defect. Now, isn't, isn't that a conceptual basis for fraudulent concealment rather than a conceptual basis for you have a safety defect? When you have a safety defect, it is material and it must be disclosed. If you know about it. The plaintiffs would like to say if GM just knew that the car was going to develop a cosmetic blemish that never manifested itself into any kind of safety issue or injury to anybody and reasonably concluded that there was no safety issue, if they plead that it's a safety issue, GM had to disclose it. That would, that would open the floodgates to fraud claims. Now maybe it's a breach of warranty claim or maybe it's a negligence claim or maybe it's some other claim. But here they're trying to, this is an intentional tort. They're trying to allege that GM, plausibly allege that GM defrauded these plaintiffs even if it didn't know that these minor cosmetic blemishes would ever materialize into any kind of safety issue. And that, that simply is not the law. Now. Didn't the court below find that there, that they had shown the design defect? The court below assumed for purposes of proceeding that the plaintiffs had, had plausibly alleged that there was a safety issue. But what the court in Amherst and the court below here decided the case on was the fact that there was nothing to indicate that GM knew that there was any safety issue. And in fact, everything pointed in the opposite direction. You know, this is a case where these vehicles, we've got eight of the most popular GM SUVs and, and sport utility, SUVs and pickups that were on the road for seven model years starting in 2007. So we've got hundreds of thousands or millions of vehicles that have been in service for a decade and have traveled tens or hundreds of thousands of miles and obviously have been involved in accidents. But despite all of that history and having these seasoned plaintiff lawyers searching high and low, they haven't been able to identify anything that suggests this is, there was actually any knowledge that can be imputed to GM of a defect. That's the argument you made to the district court and the district court's response to that argument was, well, that's what's hard about a motion to dismiss. You've got to distinguish between whether they're, they've pledged something with whether they can prove something. And we're at the motion to dismiss stage, aren't we? We are, Your Honor. But I think that what the district court said was, even if I accept the fact that there was a safety defect, I need to determine whether GM knew that there was a safety issue, both the district court below and in MRAS. And they said all of these contextual facts, and they took their lead from Iqbal and Twombly, all of these contextual facts and our common sense and judicial experience tells us that where there's, the plaintiffs concede that the testing did not demonstrate a safety issue. They conceded that before the district court. None of the consumer complaints actually identify any safety-related issue, despite the fact that these vehicles have been in use for over a dozen years. We have no... No injury. No injury? I think there's no dispute about that. I think what we're struggling, all of us are struggling with is whether this additional factor that MROS, or however you pronounce it, and this court followed, as opposed to the number of cases that are out there that simply say, what you have to show is a safety defect, and never go on to say that there is also a requirement that you show subjective awareness on the part of the defendant. Let me address that, Your Honor. Let me address that head on, because the plaintiffs are trying to, you know, denigrate MROS now, but in fact, they embraced it wholeheartedly before the district court. They noted in their brief before the district court that General Motors was relying on the two MROS decisions, and they say, without qualification or caveat, plaintiffs also urged this court to follow MROS, which actually supports the viability of plaintiffs' claims. On the following page, they quote the section from MROS where the district court said, you have to show both, you have to allege both knowledge of a defect and knowledge that it's a safety-related concern. Before the district court at the hearing, they also agreed, they agreed to the MROS rulings. Now, MROS is not an outlier. Wilson, MROS cites Wilson, which is the Ninth Circuit case, which clearly says in assessing whether or not an earlier class action had given Hewlett-Packard knowledge of a defect, the Ninth Circuit says, quote, it is unclear, however, how this class action should have made Hewlett-Packard aware that the defect posed a safety hazard. That's the Ninth Circuit. In the Miller case, which we cite in our brief, and I wish... You know, here's where I think the real struggle is. I'm trying to understand. It seems to me that we're talking past each other. There's a question on what the actual standard is. There are some cases that say you have to show that there is a safety defect. And then there are some cases that say you have to show that there is a safety defect and you have to show subjective knowledge of it. The language you just used to me was the former. That you have to show a safety defect. Now, I think that's... Is that the rub? Is that where the distinction is? I think this is important. So let me repeat what the Ninth Circuit said. And this is a way to make Hewlett-Packard aware that this defect posed a safety hazard. So I think the Ninth Circuit there is saying the former. That Hewlett-Packard had to know not only that there was a defect, but that it posed a safety hazard. And that was in the section of the opinion that was talking about whether there was knowledge of the defect. Yes. Yes, Your Honor. So there was a separate section of the opinion that talked about the defect or whatever, and the safety issue. But there was a separate section that said knowledge of defect. And it was clear that it was the safety part was in that part of the opinion, right? Correct, Your Honor. And the Barranco case, which they rely on, which is a District of California case, decided after Wilson, never discusses Wilson. Never grapples with that language. Never follows the Circuit Court opinion. But other than... What is there other than Wilson? So there is the Miller case from the District of Michigan, which was a case that involved similar allegations against General Motors brought by some of the same plaintiffs' counsel in which the court there dismissed similar claims because it concluded, quote, there was no allegation, excuse me, that the complaint failed to allege, quote, that GM had knowledge of a safety defect at the time the vehicles were purchased. That is the Miller case decided in 2018 by the District Court in Michigan with some of the same plaintiffs' lawyers on the other side. So this notion that M. Ross is an outlier, I think, is incorrect. And the fact that M. Ross relied on the restatement of torts, and that is a common theme here, suggests that the duty to disclose only gets triggered if you have something that is material or basic to the transaction. And the cases are pretty clear that we have cited that that has to be a safety issue. So maybe you can have... Does the restatement make it clear that the defendant has to know the materiality of the thing? I mean, it makes logical sense to me because we are talking about fraud and you are defrauding somebody. And it is odd to me that I would say I know there is a defect but I have no idea what the implications of it are. It turns out by happenstance ten years later that it was a safety hazard and life-threatening or whatever. But if I didn't know at the time, I don't know how that is fraudulent. But maybe I am wrong about that. But does the restatement give us anything on that? I mean, the District Court and M. Ross analyzed this and said, you know, and this is the distinction that if it was just cosmetic blemishes, it wouldn't trigger a duty to disclose. That if that is all GM thought this was and that is what GM, you know, the evidence or the allegations indicate GM thought, that wouldn't be enough. But you had to go to the next step and find something that was so fundamental to the transaction that that triggered the duty. And I don't see how you can make that leap without having the defendant know. Otherwise the defendant would have, defendants like GM or other manufacturers would have to disclose a whole host of things that they didn't think would ever materialize into any kind of issue. But you would know, I mean, you would at time zero, it would be, you wouldn't have a duty to disclose. It would only be at time, you know, T sub 5 or something, some five years later that it turned out to be a safety defect that retroactively at the time you had a duty to disclose. Right? I mean, that would be, that's my reading of the plaintiff, of what a duty to disclose a defect that turned out to be a safety defect. Right. And you're saying no, but I am curious because I don't know that the restatement gives us that answer, but maybe I'm. Well, I don't know if the restatement specifically says at least the part that the Amros court and this court relied on that, you know, you have to have knowledge of both, but it certainly says that in order to trigger a defendant's duty to disclose, it has to rise to that level of materiality. And if this is, if this is a knowledge or intent toward as fraud is, how can GM be deemed to have to make a disclosure when it doesn't have any knowledge that there's a material issue and it doesn't have any, it doesn't have any intent to deceive. I think the struggle is how do you figure out at the pleading stage what is required to show? You don't take the position that in a complaint, the plaintiffs have to allege specific subjective knowledge on the part of the defendant, do you? No, I think they have. How would they have that? I think that they have to present facts that make it reasonable to infer that General Motors had knowledge, which is exactly what the stand of the district court held them to here, particularly in the court's decision on the motion of reconsideration. You can see that. But given the totality of circumstances here, and I think the plaintiffs essentially have conceded that they haven't pled that kind of knowledge, there's nothing. I thought they thought that they had pled, or their argument is that they have pled to fit within Morose because they have pled the complaints made directly to GM, the complaints made to the safety organization and the pre-testing procedures. I understand the court did not accept that. I struggle with that a little bit because I would ask you about paragraph 103 of the complaint regarding pre-testing procedures, which in fact states time frames. GM conducted DFMEA in or around 2005 or 2006, and that was what they used to identify. I understand that's not a subjective allegation, but isn't that a time-appropriate allegation in this case that would say these plaintiffs all purchased their cars 2007 and later, and there is this pre-test that would have revealed a problem, but we don't know exactly what it revealed because only GM has that information and discovery is necessary for us to determine that. Many courts have grappled with that specific issue, but all the courts that have addressed that have said the pre-testing alone, even coupled with consumer complaints, is not enough. Wilson looked at that, the Beck case looked at that, the Burt case, Grodczynski, Rowe, all those cases said pre-testing alone plus consumer complaints is not enough. The Stewart case specifically said it's not enough to say the defendant has all the information. You need to have something more to plausibly allege that there was in fact knowledge. If somebody on the forum had complained that their airbag had deployed improperly or something, and their dashboard had been cracked or whatever, would that be enough? In other words, if it had happened, I mean, I think at a minimum that would have to be enough, wouldn't it? That would certainly move from possible towards plausible. I mean, the timing would be important. If it was one out of a million, maybe not, but certainly that would be a different case. That's not what we have. So if somebody, so I am struggling a little bit with what would plaintiffs have to plead. I mean, the testing, but I take it your position is the testing is not enough because it doesn't, this goes back to knowledge of the safety defect. If there is no manifestation of this issue, the safety issue, then it can't show your knowledge of the safety issue, I take it. That's one piece of it, Your Honor, but the courts, the cases that the plaintiff has relied on have all pointed to something more. Some indicia that the testing and the complaints were tied to a safety issue. The issuance of a technical service bulletin, the manifestation of the problem, an injury resulting in the problem, some recall, something. Something public. Something more, something more, whether it's public or not, but some indicia that suggest that this was actually the case, that the allegation, something would have suggested that the defendant actually had knowledge. Otherwise, I mean. Give me how you would articulate this because that's the difficulty. Is it, it seems to me that we are not at the issue of requiring separate knowledge because that always falls into the subjective realm and I think would create a rule that was really problematic. Are you saying that that's the rule or are you saying that the rule is you don't know that it is a safety defect without further information, meaning redefining the first half of that as opposed to adding this subjective requirement to pleadings? Yeah, and I'm not asking for a subjective requirement, but this is a really important issue and this is one that the court is going to speak to for the first time here. And I think the standard should be, have the plaintiffs plausibly alleged that it's reasonable to infer that the defendant knew that there was a material, in this case a safety defect, prior to the time that they purchased, in this case, their vehicles. And I'd ask the court to follow those decisions which look at when pre-production testing and consumer complaints have been enough and when they haven't. And I suggest to the court that the distinction is that there's something more. I mean the plaintiffs in this case, when pressed by the district court, conceded that there's no allegation that specifically says that testing actually revealed a problem. And so you can talk about testing all you want, but unless you can allege based on something that it actually revealed something, you've alleged nothing more than testing took place and the courts have said that that's not enough. Similarly, the NHTSA complaints were all innocuous. Yeah, they complained about cracking dashboards after prolonged use and operation, but there's nothing more there. There's a single-sided complaint and a footnote in the plaintiff's complaint that says, I'm afraid that if I crash, there's going to be a problem. There's nothing more. And 240 complaints in a million vehicles is a fraction of a percentage of the overall. I understand exactly where the difficulty lies, because we've got to balance not generating inappropriate and unfair class work and not allowing a defendant to hide something. And we've seen that struggle before in our history. You could think back to these awful Pinto cases. Do we have to wait until 50 people's cars are rear-ended and explode and burn everybody to death before we have a cause of action that is stateable? So the question becomes, where is that dividing line that does not necessarily require that all these injuries have occurred before you can turn to someone and say, I want to see the documents that back this up. I want to know if you knew this. And so your dividing line is a reasonable knowledge of the safety defect period. Yes, and I'm not saying it has to actually manifest and God forbid result in somebody being badly injured or killed. But that's just one of the factors that I identify here, because there's nothing else that you can point to that says, oh, this shows that it's reasonable to infer based on this that the defendant knew. And the other thing I'd just urge the Court to recall is, we're only talking about the fraud claims here. The other causes of action that might not turn on knowledge or intent, warranty or the like, were abandoned. And those claims could give plaintiffs in certain situations relief where there wasn't the kind of specific knowledge we're talking about. And you would concede that there are certain consumer protection laws that might give them the same thing. Under certain circumstances. It's hard to make a blanket statement. But here we're talking about a narrow set of claims where the defendant is accused of defrauding plaintiffs. And so to say that that can happen without the defendant knowing that there was a material issue doesn't seem like the right result. Thank you. Time's up.  I think if we look at Wilson, there's one line that references knowledge of a safety issue. There's actually no analysis of the defendant's knowledge of the safety issue. Not a single case that's been cited actually analyzes the issue of whether the defendant has knowledge of the safety implications. And I think if we, Barranco is actually directly on point. The reason why it doesn't cite to Wilson is because the Williams case came out five years later that made clear that any interpretation of Wilson that would suggest there's this extra element of knowledge is just simply incorrect. And the Barranco case, this is a great quote, no case cited by the parties has held that a manufacturer must also be aware the defect carried safety implications or is otherwise material. While the fact of the safety implications may be a requisite element of the claim, Ford's specific knowledge of a safety implication is not. And that's why the cases that GM cites to where knowledge was not sufficient, it was because plaintiff hadn't actually pled a safety issue. Like a case like Garrick, knowledge was actually adequately pled, it's just plaintiff only alleged a defect that was normal wear and tear. So at the end of the day, what the court said. I'm struggling with why the rule would make sense, though. Why is it it's a fraud? It's a fraud if it turns out to be a safety defect. It's not a fraud if it doesn't turn out to be a safety defect. It has nothing to do with what I knew at the time about safety. It just turns on whether it happened to be a safety defect later. That's a fraud? I mean, that's an intentional tort? Well, if we take a look at materiality, at the point where the defendant is aware of a defect, the defendant isn't going to potentially know whether that defect would be material or not to a consumer. The defendant has to make a decision. Is it going to disclose the defect or not disclose and risk that this would be deemed material to a consumer? It's the same thing. We're just talking about materiality. So just like in a normal case, a defendant might not know whether something is material, that doesn't matter because it is the plaintiff's burden to demonstrate that something is material the same way that it's the plaintiff's burden to demonstrate that there is a plausible safety risk. And let's just remember, this is a motion to dismiss. We're not a summary judgment. We're not a class certification. Although the evidence may ultimately demonstrate that the defect doesn't create a safety risk, it's plaintiff's burden at this stage to allege the plausible prospect of a safety concern, which is exactly what plaintiffs did and the district court recognized that by acknowledging that we pled an unreasonable safety hazard. And just like materiality, the conclusion of an unreasonable safety hazard is subject to proof. But not now and not until the plaintiffs are able to obtain discovery to support their claims. Now just as far as the knowledge allegations, if you take a look at where knowledge allegations of testing and customer complaints were insufficient, we have all that information here in our complaint. I pulled all those complaints. You can see that there is just nothing close to the level of detail that we have here. With testing, it fails because the plaintiff doesn't identify the test that was conducted. The plaintiff doesn't suggest how that testing would have made the defendant aware of the defect. Here, we identify the specific testing. We identify why that was conducted. Remember, we have to take a look at the context of what's going on here. GM changed from a multi-piece dashboard to a single piece dashboard. Because of that change, they would have conducted tests specifically on that dashboard. Customer complaints failed. But are you arguing that everything that you pled was enough to show that they knew that there was a defect or that they knew that there was a safety defect? It seems to me that question drives whether these allegations are going to be enough or not, aren't they? The requirement is knowledge of the defect. What we did argue to the district court is that to the extent it was going to require knowledge of a safety risk, we've satisfied that as well. Particularly because our customer complaints, you have customers that are actually expressing legitimate fears about the safety implications of this defect. And we can't forget that GM admitted during oral argument that it advised NHTSA of all the customer complaints that it received. The only reason why GM would have advised NHTSA is because it thought there was a plausible safety risk associated with it. That's the whole basis of the reporting requirements. Manufacturers only obligated to report an issue if they think it could implicate safety. And the fact that they did advise NHTSA kind of shows the plausibility that there is a safety risk there. It might show that they are erring on the side of being cautious because they're worried about getting sued. Well, if they're erring on the side of being cautious, then that demonstrates right there that it is not just speculative. It is possible. It is plausible. It's an admission that I think the court needs to look at very, very carefully here. And the difference with this case, too, compared to others, we haven't just alleged that there's an issue. We haven't just alleged that customers are complaining. We are alleging that customers complained of the specific defect that we've alleged with specificity and specifically raised legitimate safety concerns. That's actually something that's absent in most cases where the knowledge element is still satisfied. What are your damages if you get nothing more than what the defendant says you'll find? Nothing. We didn't have, there's no injuries. We had no knowledge of injuries. What damages are you seeking? Well, if the defendant did not have pre-sale knowledge and were not able to demonstrate there's a safety risk, then there would have been no duty disclosed. So the fact that the defect wasn't disclosed would not be actionable. We'd only have damages if we were able to prove it. Did you have no clients or anybody that have come to you and said, I've been damaged by this dashboard? Oh, yeah. All our clients are actually very concerned about this. They've all actually had... What do you say concerned? I said injured, I should have said. No. No one has been injured by this. They all have these huge gaping holes. So you're, in effect, it's a fishing expedition. Let's go see if we can find an injury, then we've got a case. No. The case law makes clear that an injury need not actually come to fruition when you have a logical explanation that shows the causal connection. Have all your plaintiffs fixed the defect? Have they all had it repaired? So some have, some haven't. There are certain ones that actually have had it repaired where it cracked again. So this is a situation where the replacement doesn't even... If it's a safety problem, I assume they're all having it fixed, right? Well, to the extent they're able to afford to have it fixed, they are doing that. It is very expensive. So it's something that certain plaintiffs are not able to do. But I think it's very telling that for those that actually came out of pocket a few thousand dollars to fix it, they're also given a similarly defective dashboard that cracks shortly after it's been installed. I see that your time's up. We thank you both for your arguments that were very helpful to analyze a difficult issue. The case will be taken under advisement and a ruling will be rendered in due course. Thank you. All of our other cases for today are not on the oral argument document.